## PRODUCTION CONTRACTORS, INC., Plaintiff,

v.

## WGN CONTINENTAL BROADCASTING CO., Defendant.

### No. 85 C 9805.

United States District Court, N.D. Illinois, E.D.

Nov. 29, 1985.

Scott Hodes, Gary L. Starkman, Donald F. Spak, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiff.

David W. Maher, James H. Alesia, Samuel Fifer, Carol Anne Been, Reuben & Proctor, Lawrence Gunnels, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court are cross-motions for summary judgment in a declaratory judgment action involving federal and state copyright and unfair competition claims. For the reasons stated herein, defendant's motion is granted and plaintiff's motion is denied regarding the claims based on federal copyright and unfair trade practice law. Accordingly, the plaintiff's remaining claims, based on state and common law theories of misappropriation, unjust enrichment and unfair competition, are dismissed for lack of pendent jurisdiction.

## I. FACTS

Plaintiff Production Contractors, Inc. (PCI), an Illinois corporation, brought this declaratory judgment action, pursuant to 28 U.S.C. § 1338 and 28 U.S.C. §§ 2201–02, in order to protect its rights in the planning, organization, and promotion of a Christmas parade in Chicago. PCI creates special events and provides technical services for special events produced by others. In that connection, PCI is the organizer and promoter of the 1985 McDonald's Charity Christmas Parade, which will be held on Thanksgiving Sunday, December 1, 1985, on Michigan Avenue between Balbo Drive and Wacker Drive in Chicago.

The parade will consist of over 100 participating units. Such units include decorative floats, horse troops, marching bands, bagpipe groups, tumblers, dancers, large helium-filled balloons, novelty acts, political figures, entertainers, and the first appearance of the year by Santa Claus in Chicago. PCI has incurred expenses in promoting and organizing the parade. Some of these expenses will be recovered from sponsor-

ship fees paid by McDonald's Corporation, Ace Hardware, Hyatt Hotels, and Midway Airlines.

On October 31, 1985, PCI sold the exclusive Chicago area television broadcast rights in the parade to the American Broadcasting Company (ABC), which owns and operates television station WLS–TV in Chicago. WLS is the "Official Television Station of the 1985 McDonald's Charity Christmas Parade." In addition to the Chicago broadcast rights, PCI has sold broadcast rights in the parade in other cities throughout the United States.

On November 6, 1985, PCI informed defendant WGN–TV, and other local television stations, that WLS had been granted the exclusive broadcast rights for the parade. Defendant WGN intends to telecast the parade, using its own personnel and equipment, simultaneously with WLS' telecast. WGN will sell advertising time for the two-hour broadcast.

On November 18, 1985, PCI demanded that WGN not televise the parade. On November 19, 1985, WGN responded that it presently intends to televise the parade. PCI claims that it will be liable to WLS for recoupment of advertising revenues if WLS' share of the television audience for the parade falls below a certain level due to WGN's competing telecast.

## II. DISCUSSION

The above facts are not disputed. The following legal issues are raised in the parties' motions: (A) whether plaintiff is entitled to federal copyright protection for the organization and promotion of the parade; (B) whether WGN's telecast of the parade constitutes false advertising and trade deception under the Lanham Act; (C) whether plaintiff's state and common law claims are preempted by Section 301(a) of the federal Copyright Act; (D) whether the court has pendent jurisdiction over the state and common law claims; and (E) whether the plaintiff has a cause of action under the state and common laws.

### A. *Federal Copyright Protection*

PCI claims that WGN's intended broadcast of the parade will infringe on PCI's copyright in the parade's production. In support of its claim, PCI argues that the production of the parade (and the parade itself) falls within the definition of a "compilation" of creative works under Sections 101 and 103(a) of the Copyright Act. 17 U.S.C. §§ 101 and 103(a). PCI further contends that the manner in which PCI intends to arrange the flow of the parade, the floats it has created and the special items of interest that it has developed for the parade represent a protected compilation. In addition, PCI argues that the script of narration and the custom-made decorative floats are individually copyrightable. Finally, PCI argues that the telecast of the parade is a copyrightable work, akin to any other television broadcast.

WGN counters that it has a First Amendment privilege to broadcast a public parade on a public street before a large live audience. Second, WGN argues that plaintiff's failure to secure, or even file for, copyright registration for the parade, the narration script and the decorative floats bars any suit for infringement for failure to comply with § 411(a) of the Copyright Act. 17 U.S.C. § 411(a). Third, WGN contends that PCI cannot avail itself of § 411(b) of the Copyright Act because the parade is not fixed and can never be fixed simultaneously with its transmission, i.e., telecast. 17 U.S.C. § 411(b). Fourth, WGN argues that the parade is not a "work of authorship," as required in § 102 of the Copyright Act. 17 U.S.C. § 102(a). Fifth, WGN contends that the parade is not and cannot ever be "fixed in a tangible medium of expression," as required in § 102 of the Copyright Act. Finally, WGN argues that its telecast of the parade falls within the "fair use" exception to copyright infringement. 17 U.S.C. § 107.

Section 102 provides for federal copyright protection of "original works of authorship fixed in any tangible medium of expression...." 17 U.S.C. § 102(a). The two elements most essential in establishing the existence of a copyright are: (1) a work of authorship; and (2) fixation, i.e., fixed in a tangible medium of expression.

In determining whether a parade, including its promotion and production, is a "work of authorship," the Court finds, and the parties agree that there is, no case law supporting the proposition that the promotion and production of a parade is a work of authorship entitled to copyright protection. In his renowned treatise on copyright law, the late Professor Melville Nimmer cites a parade as an example of an event which is not an original work of authorship. M. Nimmer, 1 Nimmer on Copyright § 2.03[B][2] n. 33. Professor Nimmer discusses a parade in relation to its live broadcast: "If a live broadcast is not based upon a work of authorship, as in the case of a sporting event, a parade, etc., then no statutory copyright infringement would result from its reproduction." *Id.*

■ The Court finds support for Professor Nimmer's above conclusion in Section 102(b) of the Copyright Act which states:

In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). In light of § 102(b)'s prohibition against copyrighting an idea and of Professor Nimmer's conclusion, the Court finds that the idea of a Christmas parade is a common one, relatively simple and contains no original creative authorship. *See Morrissey v. Proctor & Gamble,* 379 F.2d 675, 678 (1st Cir.1967) (a "sweepstakes" contest was not an original creative work of authorship); *Noble v. Columbia Broadcasting System,* 270 F.2d 938 (D.C.Cir.1959) (idea for television program of spontaneous, unrehearsed, fictitious courtroom drama was not an original creative work of authorship). Therefore, the parade itself, including its production and promotion, is not a work of authorship entitled to copyright protection.

Even if the parade itself is not copyrightable, its telecast might be entitled to copyright protection if it is fixed in a tangible medium of expression. Section 101 provides that a "work consisting of sounds, images, or both, that are being transmitted, is 'fixed' for purposes of this title if a fixation of the work is being made simultaneously with its transmission." 17 U.S.C. § 101. *See also* 17 U.S.C. § 411(b). The legislative history regarding section 101 specifically refers to the copyrightability of live telecasts of public events:

The bill seeks to resolve, through the definition of "fixation" in Section 101 ..., the status of live broadcasts— sports, news coverage, live performances of music, etc.—that are reaching the public in unfixed form but that are simultaneously being recorded. When a football game is being covered by four television cameras, with a director guiding the activities of the four cameramen and choosing which of their electronic images are sent out to the public and in what order, there is little doubt that what the cameramen and director are doing constitutes "authorship." The further question to be considered is whether there has been a fixation. ... If the program content is transmitted live to the public while being recorded at the same time, ... the copyright owner would not be forced to rely on common law rather than statutory rights in proceeding against an infringing user of the live broadcast.

Notes of Committee on the Judiciary, House Report No. 94–1476, Title 17, United States Code Annotated (West Pub.1977) p. 14.

This passage of legislative history suggests that the live telecast of a parade is copyrightable because the telecast is a work of authorship which is fixed simultaneously with its transmission. In addition, there is some case law to support the proposition that a live telecast of a sporting event is copyrightable. *National Association of Broadcasters v. Copyright Tribunal,* 675 F.2d 367, 378 (D.C.Cir.1982); *New Boston Television, Inc. v. Entertainment Sports Programming,* 1981 Copyright Law Decisions (CCH) ¶ 25,293 (D.Mass.1981). *See also* Nimmer on Copyright, § 1.08[C][2] at 1–51. However, the Court finds the above cases distinguishable from this case. In *New Boston,* the district

court considered the videotaping, excerpting and rebroadcasting of the plaintiff's copyrighted films for defendant's sports highlights. The court in *New Boston* noted, in the context of a "fair use" doctrine analysis, that the defendants had an opportunity to record the sporting events themselves but did not do so.

■ In the present case, WGN will use its own equipment, cameramen, and directors to create its own work of authorship in the parade telecast. WGN is not engaging in videotaping, tape-delays, or secondary transmission of WLS' broadcast. Therefore, the cases involving copyright protection of live telecasts, especially of sporting events, do not apply here to provide a basis for copyright infringement by WGN of WLS' telecast of the parade. Further, the Court holds that the telecast of the parade is a work of authorship fixed simultaneously with its transmission only for purposes of copyright protection from videotaping, tape-delays, or secondary transmissions. This protection does not extend to prevent another simultaneous live telecast by another television or radio station. *See Pittsburgh Athletic Co. v. KQV Broadcasting Co.*, 24 F.Supp. 490 (W.D.Pa. 1938) (unauthorized play-by-play broadcast of a baseball game from a nearby rooftop addressed under unfair competition and misappropriation theories). Therefore, WLS' live telecast is not sufficiently "fixed" to prevent WGN's simultaneous live telecast of the parade.

Since WGN will not use PCI's script of narration in its independent telecast, the issue of registration and infringement of the script is irrelevant. In addition, the potential infringement of the decorative floats is barred under § 411(a) of the Copyright Act by PCI's failure to obtain, or even file for, copyright registration for the floats. This failure is not excused by § 411(b) because the floats are "fixed" long before their transmission, i.e., when constructed, and they are tangible objects not falling within the "sounds" or "images" covered by § 411(b).

Finally, in light of its findings that the parade itself is not a work of authorship

entitled to copyright protection and that the live telecast of the parade has no copyright protection against a simultaneous and independent live telecast, the Court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment regarding federal copyright protection. Accordingly, the Court does not reach the questions concerning First Amendment privilege and the "fair use" exception to copyright infringement. Insofar as it overlaps the "fixation" issue under Section 411(b), the Court's above analysis applies to that issue as well.

### B.  *Lanham Act Protection*

PCI argues that WGN's telecast will violate Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). In support of this argument, PCI asserts that: (1) WGN's telecast of the parade will create a "false impression" of sponsorship; and (2) WGN's telecast of the parade will divert viewers away from WLS' telecast. Defendant WGN counters that PCI has failed to establish the "secondary meaning" necessary to associate the parade in the public's mind with PCI as its source or originator. In addition, WGN asserts that the plaintiff has failed to produce any evidence of a likelihood of confusion created by WGN's telecast.

The Court finds the result and reasoning in *Walt-West Enterprises v. Gannett Co.*, 695 F.2d 1050 (7th Cir.1982) to be persuasive in the present case. In *Walt-West*, two competing FM radio stations disputed each other's use of "FM 107" to designate a radio frequency near 107 mHz. The Seventh Circuit Court of Appeals reversed injunctive relief granted under Section 43(a), finding insufficient proof of secondary meaning in the designation of "FM 107." The insufficient proof of secondary meaning was linked to the consequent failure of the plaintiff in *Walt-West* to prove likelihood of confusion in the public's mind. *Id.* at 1063.

■ In the present case, PCI's conclusory statement that WGN's telecast of the parade will necessarily create the false impression that WGN is somehow connected

with PCI falls far short of establishing likelihood of confusion and the secondary meaning associating PCI with the parade, which is a necessary basis for any public confusion.

### C. *State and Common Law Claims*

█ Section § 1338(b), 28 U.S.C., provides for federal court jurisdiction over state and common law unfair competition claims when they are "joined with a substantial and related claim under the copyright ... laws." 28 U.S.C. § 1338(b). Although a district court has subject matter jurisdiction of an unfair competition claim when it is joined with a substantial and related claim under the copyright laws, in the exercise of its discretion, the district court may dismiss the pendent claim when the federal claim is dismissed prior to trial. *Jason v. Fonda*, 526 F.Supp. 774, 778 (C.D. Cal.1981) (citing *Wham-O-Mfg. Co. v. Paradise Mfg. Co.*, 327 F.2d 748, 753 (9th Cir. 1964)). *See also Davis v. United Artists, Inc.*, 547 F.Supp. 722, 728 (S.D.N.Y.1982) (copyright and trademark claims dismissed prior to trial).

█ In the present case, the Court finds no cause of action for plaintiff's claims under federal copyright and unfair trade practice laws. Accordingly, in the exercise of its discretion, the Court dismisses plaintiff's remaining state and common law claims, based on unfair competition, misappropriation, and unjust enrichment, for lack of pendent jurisdiction. The Court notes that the plaintiff may very well have a good cause of action on its state and common law claims. However, since WGN does business in Illinois, diversity is lacking in this case and the Court has no jurisdiction to hear those claims.

### III. CONCLUSION

For the reasons stated above, the Court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment on its claims brought under the federal copyright and unfair trade practice laws. Accordingly, plaintiff's remaining state and common law

claims are dismissed for lack of pendent jurisdiction.

IT IS SO ORDERED.