**WCVB–TV, Plaintiff, Appellee,**

v.

**BOSTON ATHLETIC ASSOCIATION, et al., Defendants, Appellants.**

**No. 90–1315.**

United States Court of Appeals, First Circuit.

Heard Dec. 3, 1990.

Decided Feb. 12, 1991.

Thomas M.S. Hemnes, Robert E. Fast, and George J. Skelly with whom Steven W. Phillips, Bruce R. Parker, Teresa A. Martland, Foley, Hoag & Eliot, H. Reed Witherby, Hale and Dorr, Thomas J. Dougherty, and Skadden, Arps, Slate, Meagher & Flom, Boston, Mass., were on brief, for appellants Boston Athletic Ass'n, ProServ Television, Inc. and WBZ–TV.

Thomas P. Olson, Stuart P. Green, Wilmer, Cutler & Pickering, Steven A. Weiswasser, Washington, D.C., Charles Stanford, Joel Lulla, New York City, and Edwin M. Durso, Washington, D.C., on brief, for amici curiae ABC Sports, Inc. and ESPN, Inc.

Steven J. Comen with whom Wm. Gordon Prescott, William R. Moore, Christopher J. Petrini, Hinckley, Allen, Snyder & Comen, Boston, Mass., and Janine Ann Petit, New York City, were on brief, for appellee.

Roberta L. Cairney, James M. Wagstaffe, Kurtis J. Kearl and Cooper, White & Cooper, San Francisco, Cal., on brief for amici curiae The Chronicle Pub. Co., WGBH Educational Foundation and Post–Newsweek Stations, Inc.

Before BREYER, Chief Judge, and ALDRICH and COFFIN, Senior Circuit Judges.

BREYER, Chief Judge.

The Boston Athletic Association ("BAA"), its licensing agent (ProServ), and Channel 4 (WBZ–TV) appeal the district court's refusal to enjoin Channel 5 (WCVB–

TV) from televising the Boston Marathon. They point out 1) that the BAA has spent a great deal of money over the years promoting the annual Patriot's Day marathon event, 2) that it has registered the words "Boston Marathon" as a trade, or service mark, in connection with the event, 3) that it has licensed (for a fee) Channel 4 to broadcast the event on television, 4) that it has not licensed Channel 5 to broadcast the event or to use its mark, 5) that Channel 5 broadcast the event last year anyway, and intends to do so in 1991, simply by placing television cameras in the streets along the marathon route, and 6) that Channel 5 used the words "Boston Marathon" on the screen in large letters before, during, and after the event. They argue that Channel 5, by broadcasting the words "Boston Marathon" in connection with the event, violated federal trademark law. They asked the district court to issue a preliminary injunction, it refused to do so, and they have appealed that refusal.

■■■ In our view, the district court's refusal to grant the preliminary injunction was lawful. The dispositive legal issue concerns "customer confusion." A trademark, or service mark, is an "attention getting symbol" used basically, and primarily, to make clear to the customer the origin of the goods or the service. *See* 1 J. McCarthy, *Trademarks and Unfair Competition* § 11.17 at 476 (2d ed. 1984). Trademark law prohibits the unauthorized use of such a mark, but *only* where doing so creates a "likelihood of confusion" about who produces the goods or provides the service in question. *See* 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 28–35 & n. 11 (1st Cir.1989); *see also Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir.1977). Unless a plaintiff can convince a district court that it will likely show such a "likelihood of confusion" on the merits of its trademark claim (or can convince a court of appeals that the district court abused its discretion), it is not entitled to a preliminary injunction. *See Planned Parenthood League v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981) ("likelihood of success" on merits one of four

requirements for grant of preliminary injunction; "abuse of discretion" standard for appellate review); *Hypertherm, Inc. v. Precision Products, Inc.*, 832 F.2d 697, 699 n. 2 (1st Cir.1987) (trademark case). Yet, we cannot find in the record before us sufficient evidence of relevant customer confusion, arising out of Channel 5's use of the words "Boston Marathon," to require the district court to issue the preliminary injunction that the appellants seek.

Obviously, we do not have before us the common, garden variety type of "confusion" that might arise with typical trademark infringement. This is not a heartland trademark case, where, for example, plaintiff uses the words "Big Tom" to mark his apple juice, defendant (perhaps a big man called Tom) uses the same words (or perhaps similar words, *e.g.*, "Large Tommy") on his own apple juice label, and plaintiff says customers will confuse defendant's apple juice with his own. *See, e.g., Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920 (10th Cir.1986) ("Beer Nuts" and "Brew Nuts" confusingly similar); 2 J. McCarthy § 23.3 at 56 ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports ... [and] are 'open and shut'...."). No one here says that Channel 5 is running its own marathon on Patriot's Day, which a viewer might confuse with the BAA's famous Boston Marathon.

Rather, BAA argues that the confusion here involved is somewhat special. It points to cases where a defendant uses a plaintiff's trademark in connection with a different type of good or service and a plaintiff claims that the public will wrongly, and confusedly, think that the defendant's product somehow has the plaintiff's official "O.K." or imprimatur. The Eleventh Circuit, for example, found trademark law violated when the defendant, without authorization, used the plaintiff's football team mark, a bulldog, not in connection with a different football team, but, rather, on his beer mugs. *See University of Georgia Athletic Ass'n v. Laite,* 756 F.2d 1535 (11th Cir.1985). This circuit has found

trademark law violated, when the defendant, without authorization, used this very appellant's foot race mark, "Boston Marathon," on his t-shirts, sold during the event, permitting the customer to wrongly or confusedly think that his t-shirts were somehow "official." *See Sullivan, supra.* BAA goes on to say that Channel 5's use of those words will lead viewers, wrongly, and confusedly, to believe that Channel 5 (like the t-shirt seller) has a BAA license or permission or authorization to use the words, *i.e.,* that it broadcasts with the BAA's official imprimatur. It also notes that this court, in *Sullivan,* listed circumstances that create a "rebuttable presumption" of confusion. And, it quotes language from *Sullivan,* in which this court, citing *International News Service v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), said that the defendant's t-shirts were "clearly designed to take advantage of the Boston Marathon and to benefit from the good will associated with its promotion by plaintiffs," and that defendants obtained a "free ride" at the plaintiffs' expense; they "reap where [they have] not sown." *Sullivan,* 867 F.2d at 33. Appellants say that Channel 5 is doing the same here.

■ In our view, the cases BAA cites, and *Sullivan* in particular, do not govern the outcome of this case. Nor can we find a likelihood of any relevant confusion here. First, the *Sullivan* opinion, taken as a whole, makes clear that the court, in using the language appellants cite, referring to a "free ride," and taking "advantage" of another's good will, did not intend to depart from ordinary principles of federal trademark law that make a finding of a "likelihood of confusion" essential to a conclusion of "violation." As a general matter, the law *sometimes* protects investors from the "free riding" of others; and *sometimes* it does not. The law, for example, gives inventors a "property right" in certain inventions for a limited period of time; *see* 35 U.S.C. §§ 101 *et seq.;* it provides copyright protection for authors; *see* 17 U.S.C. §§ 101 *et seq.;* it offers certain protections to trade secrets. *See generally* 2 J. McCarthy § 29.16. But, the man who clears a swamp, the developer of a neighborhood, the academic scientist, the school teacher, and millions of others, each day create "value" (over and above what they are paid) that the law permits others to receive without charge. Just how, when and where the law should protect investments in "intangible" benefits or goods is a matter that legislators typically debate, embodying the results in specific statutes, or that common law courts, carefully weighing relevant competing interests, gradually work out over time. The trademark statute does not give the appellants any "property right" in their mark *except* "the right to prevent confusion." *See Quabaug Rubber Co.,* 567 F.2d at 160; 2 J. McCarthy § 23.1. And, nothing in *Sullivan* suggests the contrary.

Second, the "rebuttable presumption" of confusion that this court set forth in *Sullivan* does not apply here. We concede that the *Sullivan* court said that "there is a rebuttable presumption" of confusion "about the shirts' source or sponsorship" arising from the fact that the defendants used the words "Boston Marathon" on the shirts, which use made customers more likely to buy the shirts. The court wrote that

> when a manufacturer *intentionally* uses another's mark *as a means of establishing a link* in consumers' minds with the other's enterprise, and directly profits from that link, there is an unmistakable aura of deception.

*Sullivan,* 867 F.2d at 35 (emphasis added). As we read these words, they mean that the *Sullivan* record indicated that the defendant wanted to give the impression that his t-shirt was an "official" t-shirt, a fact that, in the sports world, might give a shirt, in the eyes of sports fans, a special "cachet." It makes sense to presume confusion about a relevant matter (namely, official sponsorship) from such an intent, at least in the absence of contrary evidence.

Here, however, there is no persuasive evidence of any intent to use the words "Boston Marathon" to suggest official sponsorship of Channel 5's broadcasts. To the contrary, Channel 5 offered to "broadcast whatever disclaimers" the BAA might

want—"every thirty seconds, every two minutes, every ten minutes"—to make certain no one thought the channel had any special broadcasting status. Nor is there any evidence that Channel 5 might somehow profit from viewers' wrongly thinking that the BAA had authorized its broadcasts. Indeed, one would ordinarily believe that television viewers (unlike sports fans who might want to buy an official t-shirt with the name of a favorite event, team or player) wish to see the event and do not particularly care about the relation of station to event-promoter. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir.1979) (when deciding whether there is confusion "the wholly indifferent [consumers] may be excluded") (cites omitted); 2 J. McCarthy § 23.27 at 129 & n. 20 (trademark law does not "protect those buyers who ... [are] 'indifferent'" to the mark).

Third, and perhaps most importantly, the record provides us with an excellent reason for thinking that Channel 5's use of the words "Boston Marathon" would *not* confuse the typical Channel 5 viewer. That reason consists of the fact that those words do more than call attention to Channel 5's program; they also *describe* the event that Channel 5 will broadcast. Common sense suggests (consistent with the record here) that a viewer who sees those words flash upon the screen will believe simply that Channel 5 will show, or is showing, or has shown, the marathon, not that Channel 5 has some special approval from the BAA to do so. In technical trademark jargon, the use of words for descriptive purposes is called a "fair use," and the law usually permits it even if the words themselves also constitute a trademark. *See* 15 U.S.C. § 1115(b)(4) (statutory fair use defense); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 796 (5th Cir.1983) (fair use established if mark descriptive, not used in trademark sense, and used in good faith). If, for example, a t-shirt maker placed the words "Pure Cotton" (instead of the words "Boston Marathon") on his t-shirts merely to describe the material from which the shirts were made, not even a shirt maker who had a registered trademark called "Pure Cotton" could likely enjoin their sale. *Cf. Leathersmith of London, Ltd. v. Alleyn*, 695 F.2d 27, 30–31 (1st Cir.1982), *cert. denied*, 459 U.S. 1209, 103 S.Ct. 1202, 75 L.Ed.2d 444 (1983). As Justice Holmes pointed out many years ago, "[w]hen the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 351, 68 L.Ed. 731 (1924).

This is not a case where it is difficult to decide whether a defendant is using particular words primarily as a mark, *i.e.*, as an "attention getting symbol," or primarily as a description. *Cf. Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 937–38 (10th Cir.1983); *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1027–28 (7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980); *Venetianaire Corp. of America v. A & P Import Co.*, 429 F.2d 1079, 1083 (2d Cir.1970). Here there is little in the record before us to suggest the former (only the large size of the words on the screen); while there is much to show the latter (timing, meaning, context, intent, and surrounding circumstances). Consequently, the appellants have shown no real likelihood of relevant confusion.

We also note that the only federal court which has decided a case nearly identical to the one before us, a case in which a station planning to televise a public parade was sued by the parade's promoter who had granted "exclusive" rights to another station, reached a conclusion similar to the one we draw here. *See Production Contractors, Inc. v. WGN Continental Broadcasting Co.*, 622 F.Supp. 1500, 1504 (N.D.Ill. 1985). Reviewing the promoter's Lanham Act claim that the "unauthorized" broadcast would create a "false impression" of sponsorship, the court concluded that it fell "far short of establishing likelihood of confusion" among viewers that the defendant station was the "official" or "authorized" broadcaster of the parade. *See id.* at 1504–05. Similarly, we do not see how Channel 5's broadcast could likely confuse viewers that it bore the imprimatur of the BAA.

■ The BAA makes one further argument. It says that, because Channel 5, in

earlier years, paid it for a license to use the mark for its broadcasts, Channel 5 is "estopped" from contesting the mark's "validity." The estoppel cases that BAA cites, however, all concern a challenge to the *validity* of a mark, a challenge absent here. *See, e.g., Professional Golfers Ass'n v. Bankers Life & Casualty Co.*, 514 F.2d 665, 671 (5th Cir.1975) (challenge based on abandonment); *Seven–Up Bottling Co. v. Seven–Up Co.*, 420 F.Supp. 1246, 1251 (E.D.Mo.1976), *aff'd*, 561 F.2d 1275 (8th Cir.1977) (challenge based on false registration statements); *see also* 1 J. McCarthy § 18.20 ("trademark licensee is estopped from challenging the validity of the licensor's mark"). Regardless, we can find no case that would even prevent a challenge by a *prior* licensee, based upon *post-*license facts, after the license has expired. *See generally* 3 Callman, *Unfair Competition, Trademarks & Monopolies* § 19.48 (4th ed. 1989). We cannot think of any reason why such a licensee ought to be estopped; or why, a grant of a license should *permanently* immunize a trademark holder from legal attack. *Compare Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) (estoppel doctrine does not apply to patent licensees) *with Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 328–29 (6th Cir.), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973) (estoppel doctrine does apply to trademark licensees).

Finally, we note that *amici* in support of appellants have raised various questions of state law. Appellants themselves, however, have not raised those questions; consequently, they are not properly before us. *See United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 60 n. 2, 101 S.Ct. 1559, 2176 n. 2, 67 L.Ed.2d 732 (1981); *Knetsch v. United States*, 364 U.S. 361, 370, 81 S.Ct. 132, 137, 5 L.Ed.2d 128 (1960).

The district court's denial of the motion for preliminary injunction is

*Affirmed.*