**DOWBRANDS, L.P., Plaintiff,**

v.

**HELENE CURTIS, INC., Defendant.**

Civ. No. 3–93–440.

United States District Court,
D. Minnesota,
Third Division.

Aug. 8, 1994.

Charles A. Mays, Leonard, Street & Deinard, Minneapolis, MN, for plaintiff.

Jeff H. Eckland and William L. Roberts, Faegre & Benson, Minneapolis, MN, and Raymond I. Geraldson, Jr., Joseph N. Welch and John Murphy, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

In this action, plaintiff Dowbrands, L.P. ("DowBrands") contends that defendant Helene Curtis, Inc.'s ("HCI") use of the phrase "Style Freeze" in connection with its line of SALON SELECTIVES hair care products creates a likelihood of confusion with the family of STYLE trademarks which Dow-Brands uses for hair, skin and nail care products. DowBrands alleges that HCI's conduct constitutes trademark infringement, a false or misleading description of the origin and/or affiliation of HCI's product, unfair competition and a deceptive trade practice. Presently before the Court are two motions. DowBrands moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for

partial summary judgment in its favor on the "fair use" defense asserted by HCI. HCI filed its own motion for summary judgment when its response to plaintiff's motion was due. HCI requests that the Court (1) decide the "fair use" issue in its favor or (2) grant summary judgment to the defendant on the grounds that there is no "likelihood of confusion." For the reasons set forth below, the Court will deny both the plaintiff's and the defendant's motions.

## Background

DowBrands, a limited partnership formed under the laws of Delaware, manufactures and sells hair care products; its principal place of business is in Zionville, Indiana and it has a business office and manufacturing facilities in Fridley, Minnesota. (Compl., ¶ 1.) DowBrands merged with La Maur, Inc., a Minnesota corporation, and became the successor to certain of La Maur's trademarks utilizing the word "STYLE." Following the merger, DowBrands has registered other trademarks which use the word "STYLE." [1] The following trademarks appear on the Principal Register of the United States Patent and Trademark Office in either La Maur's or DowBrands' names:

| Registration Number & Date | Mark | Product |
|---|---|---|
| (a) 753,442 7/23/63 | STYLE | hair fixative |
| (b) 774,262 7/28/64 | STYLE | permanent waving compositions, nail coating compositions, and cream rinse compositions |
| (c) 828,335 5/2/67 | STYLAC | hair fixative |
| (d) 883,902 1/6/70 | STYLE | preparations for hair care; preparations for skin and hand care |
| (e) 1,017,724 8/5/75 | STYLE | composition for thickening hair |
| (f) 1,138,930 8/26/80 | FREESTYLE | hair shampoo and talc |
| (g) 1,640,139 4/9/91 | FREE STYLE | hair care products (hair spray and conditioner) |
| (h) 1,652,852 8/6/91 | DRY STYLE | hair care preparations, namely fixatives |
| (i) 1,678,211 3/10/92 | STYLE PLUS | hair care preparations, namely shampoo and conditioner |

**1.** Of the marks listed in the text, DowBrands is recorded as the owner for (g), (h), (i), and the renewal of (d). The other marks are registered in the name of La Maur.

(Mays Decl., Exhs. A–I). DowBrands contends that its exclusive right to use marks (a), (b) and (c) is incontestable.[2] (Compl. ¶ 7.) DowBrands currently produces a number of hair care products that bear the STYLE trademark, including shampoos, conditioners, styling mousse, hair spray and styling and sculpting gels. (Oral Arg. Exhs. C & D.)

HCI, an Illinois corporation, also manufactures and sells hair care products; its principal place of business is in Chicago, Illinois, and it does business in Minnesota. (Answer, ¶ 2.) HCI manufactures, distributes, advertises and sells as part of its SALON SELECTIVES product line a hair care product bearing the phrase "Style Freeze." (*Id.*, ¶ 11.) A "freeze" product is a hair fixative which provides an exceptionally firm hold. Carey Depo. at 51–52 (Welch Aff., Tab A). HCI admits that it was aware of the plaintiff's—and others'—use of the term "style" in connection with certain hair care products. (*Id.*, ¶ 12.) HCI has never sought permission, license or consent from DowBrands, however, to use the term "style." (*Id.*, ¶ 11.)

## Analysis

### I. Standard of Decision

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that Rule:

[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Stated in the negative, summary judgment will be denied where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

**2.** *See infra* note 3 for a discussion of incontestability.

242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The focus of a summary judgment motion is on the presence of issues of material fact; disputed issues of fact that will not affect the outcome of the action are not sufficient to withstand a properly supported motion for summary judgment. *Fischer v. NWA, Inc.*, 883 F.2d 594, 597 (8th Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

On a motion for summary judgment, the movant bears the burden of bringing forward sufficient evidence to establish that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in the light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Trnka v. Elanco Prod.*, 709 F.2d 1223, 1225 (8th Cir.1983). Where a moving party, with whatever it provides the court, makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of his pleadings; rather, the adverse party's response must "set forth specific facts showing that there is a genuine issue for trial." *Id.* 477 U.S. at 256, 106 S.Ct. at 2514. That is, the party opposing the motion for summary judgment must make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial. *Fischer*, 883 F.2d at 599. Where a party opposing the motion fails to establish the existence of an essential element, all other facts are immaterial and the moving party is entitled to judgment as a matter of law because the non-moving party

has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Id.*

## II. The "Fair Use" Doctrine in Trademark Law

All marks are divided into four broad categories, based upon their relative strength, for purposes of legal recognition. Those categories, in descending order of strength are (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, and (4) generic. *Woodroast Systems, Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906, 911 (D.Minn.1992) (citing cases), *aff'd* 994 F.2d 844 (8th Cir.1993) (Table). A generic mark cannot be a trademark. 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 12.01 (3d ed. 1992). As numerous courts have noted, these classifications are not absolutes: "Although meant as pigeon-holes, these useful labels are instead central tones in a spectrum; they tend to merge at their edges and are frequently difficult to apply." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir.1980), *cert. denied* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981); *see also WSM, Inc. v. Hilton*, 724 F.2d 1320, 1325 (8th Cir. 1984).

The registration of a trademark on the Principal Register is *prima facie* evidence of the mark's validity, the registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark in commerce. 15 U.S.C. § 1115(a). Once the right to use the registered mark becomes incontestable,[3] "the registration shall be *conclusive* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce." 15 U.S.C. § 1115(b) (emphasis added).

---

**3.** A mark may become incontestable after it has been in continuous use for five consecutive years following the date of its registration. Within one year of the completion of any such five-year period, an affidavit must be filed with the Commissioner setting forth those goods or services stated in the registration for which the mark has been in use for the five-year period. The affidavit must also state that the mark is still in use in

commerce for those same goods or services at the time of the affidavit's execution. 15 U.S.C. § 1065. The incontestability of a mark does not affect its strength. Thus, a descriptive trademark, although it has become incontestable, may still only be entitled to minimal protection. *Woodroast Systems, Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906, 912 n. 10 (D.Minn.1992).

 Such evidence is subject, however, to a number of statutory defenses or defects. Among these is the "fair use" defense, which provides that infringement of an incontestable mark may be defended on the grounds that

> ... the use of the name, term or device charged to be an infringement is a use, otherwise than as a mark ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin....

15 U.S.C. § 1115(b)(4). The burden of proof rests on the defendant to establish the applicability of the "fair use" defense. *Girls Clubs of Am. v. Boys Clubs of Am.*, 683 F.Supp. 50, 54 n. 4 (S.D.N.Y.), *aff'd* 859 F.2d 148 (2d Cir.1988) (table). The fair use doctrine is based on the principle that no one should be able to appropriate descriptive language through trademark registration. *Sands, Taylor & Wood v. Quaker Oats*, 978 F.2d 947, 951 (7th Cir.1992) (citing *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 528, 44 S.Ct. 615, 616, 68 L.Ed. 1161 (1924)), *cert. denied* —— U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993).

The parties disagree on what a defendant must prove to prevail on a "fair use" defense. DowBrands contends that the defendant must show that (1) DowBrands' STYLE marks are descriptive, rather than suggestive; (2) HCI has made only descriptive, nontrademark use of the phrase "Style Freeze"; and (3) HCI used the phrase "Style Freeze"

fairly and in good faith. HCI, however, argues that the first element stated by Dow-Brands mischaracterizes the nature of the "fair use" defense. HCI asserts that an infringing defendant need not establish that *plaintiff's mark* is descriptive; rather, it need only establish that *its use* of the mark is descriptive. The Eighth Circuit has never stated whether a defendant must prove the strength of a plaintiff's trademark to avail itself of the "fair use" defense.[4] Accordingly, this Court must look to the law of other circuits.

The principal support for the plaintiff's construction of the "fair use" defense is the Fifth Circuit's opinion in *Zatarain's, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791 (5th Cir.1983). In *Zatarain's*, the court of appeals held that "[t]he [fair use] defense is available only in actions involving descriptive terms and only when the term is used in its descriptive rather than its trademark sense." 698 F.2d at 791 (citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980); *Venetianaire Corp. of Am. v. A & P Import Co.*, 429 F.2d 1079 (2d Cir.1970)).[5] The Fifth Circuit affirmed the district court's finding that plaintiff's mark, "Fish-fri," was a descriptive term that identified a function of plaintiff's product (cornmeal batter for frying fish), and had acquired a secondary meaning in the geographic market. *Id.* at 789. The court of appeals concluded that the defendant had a fair use defense to infringement of the term "Fish-fri." A number of appellate and district courts have followed the Fifth Circuit in holding that fair use is a defense only

---

4. This Court examined the applicability of the "fair use" defense in *Woodroast Systems, Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906 (D.Minn.1992). In that opinion, the Court concluded that a genuine issue of material fact existed concerning whether the defendant was using the phrase "wood roasted" as a service mark; accordingly, it could not grant summary judgment on the fair use issue. 793 F.Supp. at 913–14. The Court did not specifically address whether the strength of plaintiff's "Woodroast" mark had any effect on the fair use defense, although it earlier concluded that a genuine issue of fact existed with respect to whether the "Woodroast" mark was suggestive, descriptive, or generic. *Id.* at 913.

5. The Court questions the strength of the cases relied upon in *Zatarain's* to support its holding.

In *Venetianaire*, the plaintiff claimed that defendant had infringed upon plaintiff's registered trademark, "Hygient." The Second Circuit concluded that "Hygient" was an *arbitrary and fanciful* mark, similar to the common word, "hygienic." 429 F.2d 1079, 1082 (2d Cir.1970). By registering a fanciful mark which is derived from a common descriptive term, the plaintiff could not "prevent even direct competitors from using such a common term to appropriately denominate or fairly describe a characteristic of their goods." *Id.* Similarly, in *Soweco*, the Fifth Circuit stated that the fair use defense is one of several permissible defenses to an "incontestable" mark which is available "when the allegedly infringing term is used not as a trademark but fairly and in good faith only to describe to users the goods and services of such party or their geographic origin." 617 F.2d at 1185.

against descriptive, not suggestive, trademarks.[6]

In support of its construction of the "fair use" defense, HCI turns first to the language of section 1115(b)(4). That section provides a defense to an infringement action if *"the use of the . . . term . . . charged to be an infringement is a use,* otherwise than as a mark, . . . of a term . . . *which is descriptive of* and used fairly and in good faith only to describe *the goods or services of such party,* or their geographic origin." 15 U.S.C. § 1115(b)(4) (emphasis added). The plain language of section 1115(b)(4) does not confine the defense to only descriptive marks that have become incontestable; rather it applies to all incontestable marks. Furthermore, the case law cited by both DowBrands and HCI clearly indicates that the "goods or services of such party" refers to the goods or services of the alleged infringer. *See Zatarain's,* 698 F.2d at 791; *Abercrombie & Fitch v. Hunting World, Inc.,* 537 F.2d 4, 12 (2d Cir.1976). Thus, HCI argues that the applicability of the "fair use" defense depends solely on the nature of the use being charged as an infringement.

Consistent with the statutory language of the "fair use" provision, the Seventh Circuit set forth the elements of the "fair use" defense, making no determination as to the strength of the plaintiff's trademark, "Thirst–Aid:"

To prevail on a fair use defense, a defendant must establish that its use of a registered "term or device" is "otherwise than as a trade or service mark," that the term or device is "descriptive of" the defendant's goods or services and that the defendant is using the term or device "fairly

and in good faith only to describe to users" those goods and services.

*Quaker Oats,* 978 F.2d at 951 (quoting the pre–1988 amendment version of 15 U.S.C. § 1115(b)(4)). The *Quaker Oats* court evaluated *only* the defendant's use of the plaintiff's registered and incontestable mark, specifically whether that use was suggestive or descriptive. *Id.* at 952–54.

HCI's position is buttressed by the Court of Appeals for the Second Circuit's reasoning in *Abercrombie & Fitch.* Judge Friendly, for the court, began his analysis of plaintiff's infringement claim by noting a few fundamental principles of trademark law. A term that is in one category for a particular product may be in a different category for another; thus "Ivory" may be a fanciful term when referring to soap but be generic or descriptive when referring to another product. 537 F.2d at 9 & n. 6. A term may also shift from one category to another over time in light of differences in usage; thus, a term such as "escalator," which began as a fanciful or at least suggestive term, over time has become generic. *Id.* & n. 7. Finally, the same term may be put to different uses with respect to a single product. *Id.* (citing 15 U.S.C. § 1115(b)(4)). In evaluating the fair use defense asserted by Hunting World, Judge Friendly held that it was immaterial whether plaintiff Abercrombie & Fitch's use of the mark "Safari" for boots was suggestive or descriptive: "When a plaintiff has chosen a mark with some descriptive qualities, he cannot altogether exclude some kinds of competing uses, even when the mark is properly on the register." *Id.* at 12. The court of appeals concluded that defendant's reference to "Safari" was a "fair use" made in the context of hunting and travelling and *not* as an at-

---

6. *Institute for Scientific Information v. Gordon & Breach,* 931 F.2d 1002, 1010 (3d Cir.) (discussing in dicta district court's determination of whether plaintiff's mark was "clearly descriptive" as necessary prerequisite to evaluating "fair use" defense), *vacating and remanding* 743 F.Supp. 369 (E.D.Pa.1990), *cert. denied* —— U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); *WCVB–TV v. Boston Athletics Ass'n,* 926 F.2d 42, 46 (1st Cir. 1991) (stating that "fair use" defense requires that plaintiff's mark be descriptive); *Shakespeare Co. v. Silstar Corp. of Am.,* 802 F.Supp. 1386, 1396 (D.S.C.1992), *rev'd on other grounds* 9 F.3d 1091 (4th Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994); *Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F.Supp. 96, 132–33 (S.D.N.Y.1989); *cf. Ringling Bros.—Barnum & Bailey Combined Shows, Inc. v. Celozzi–Ettelson Chevrolet, Inc.,* 855 F.2d 480, 481, 484 (7th Cir.) (evaluating "fair use" defense after noting that district court found "The Greatest Show on Earth" to be descriptive mark that had acquired secondary meaning). *See generally* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 11.17[1] (3d ed. 1992).

tempt to capitalize on the plaintiff's goodwill. *Id.*

■ This Court concludes that the "fair use" defense is not limited in application to "descriptive marks," but rather is available against all incontestable registered marks. Accordingly, the Court will analyze the cross motions for summary judgment on this issue in accordance with the three-factor test set out in *Quaker Oats.*

■ First, HCI must establish that it is using the term "style" in the phrase "style freeze" otherwise than as a trademark. "A trademark, or service mark, is an 'attention getting symbol' used basically, and primarily, to make clear to the customer the origin of the goods or the service." *WCVB–TV v. Boston Athletic Association,* 926 F.2d 42, 44 (1991); *see also Beer Nuts, Inc. v. Clover Club Foods, Co.,* 711 F.2d 934, 938 (10th Cir.1983) ("A trademark is a symbol that attracts public attention, is the most prominent element of the package and dominates the package as a whole"); *Woodroast Systems,* 793 F.Supp. at 913–14. Ultimately, however, "the important question is not how readily the mark will be noticed, but whether, when it is noticed, it will be understood as indicating the origin of the goods." *Chun King Corp. v. Genii Plant Line, Inc,* 403 F.2d 274, 276 (C.C.P.A.1968).

Examining HCI's "Style Freeze" product, the Court concludes that, to the extent that every aspect of its trade dress is geared toward attracting public attention, there is nothing particularly noteworthy about the phrase "Style Freeze." The phrase does not appear in lettering that is larger or more distinctive than most of the other lettering on the package; in fact, the phrase appears in the second smallest type. Nor is the phrase

"Style Freeze" set off conspicuously.[7] Furthermore, a substantial portion of the product's front label is devoted to the Helene Curtis name, the housemark of a woman with flowing hair and the name SALON SELECTIVES. (Oral Arg. Exhs. A & B.) At the bottom of the package are three lines which describe the characteristics and function of the product: "Fast drying, intense hold to lock your style in place."

Plaintiff argues that the presence of defendant's house- and trademarks are not sufficient to preclude the possibility that "Style Freeze" is being used as a trademark. The case law which plaintiff relies upon, however, is distinguishable in that the terms at issue in those cases appeared as prominently as the defendant's own trademark. *See Woodroast Systems,* 793 F.Supp. at 914 (discussing *Frito–Lay, Inc. v. Bachman Co.,* 704 F.Supp. 432, 436 (S.D.N.Y.1989)). The Court concludes that there is no evidence sufficient to allow a reasonable factfinder to find that "Style Freeze" indicates the origin or source of HCI's product. Accordingly, HCI has established that its use of the phrase "Style Freeze" is "otherwise than as a mark." [8]

■ Second, HCI must show that the phrase "style freeze" is descriptive of its goods. DowBrands contends that there is no evidence that "style" and "freeze" *when used together* constitute a common descriptive term. DowBrands contends that other manufacturers use descriptors for the same type of product which do not incorporate the word "style;" indeed, DowBrands alleges that HCI is the only company that uses "style freeze" as a descriptor. The availability of other English words to describe the product, DowBrands argues, is evidence that HCI's use is not descriptive.

---

7. Indeed, by contrast other elements of the package's trade dress are markedly set off from the pink background of the package: the phrase "Ultra Hold 20" is set off in a blue inverted triangle and the word "Bodifying" is set off in a blue rectangle. (Oral Arg. Exh. B.)

8. Following the hearing on these motions, counsel for DowBrands submitted to the Court an advertisement for SALON SELECTIVES products which features, at the bottom, the trademarked phrase SALON SELECTIVES: THE EL-

EMENTS OF STYLE. The advertisement does not contain any representation of or reference to the "style freeze" product. DowBrands argues that this advertisement indicates that HCI is making trademark use of the word style. The Court concludes that the advertisement does not involve the alleged infringement which is the basis of DowBrands' complaint, HCI's use of the word "style" in the phrase "style freeze." Accordingly the Court will not consider the post-hearing submission.

"It is not necessary that a descriptive term depict the [good or service] itself, but only that the term refer to a characteristic of the [good or service]." *Forum Corp. v. Forum Ltd.*, 903 F.2d 434, 444 (7th Cir.1990). Descriptiveness is measured against the standard of consumer perception: How is it "perceived by the average prospective consumer?" *Heileman Brewing Co. v. Anheuser Busch, Inc.*, 873 F.2d 985, 994 (7th Cir.1989). The fact that a phrase is uncommon "does not preclude a finding that it is descriptive rather than suggestive." *Quaker Oats*, 978 F.2d at 953. How a particular word or phrase has been used and how it has been understood by the public is a question of fact. *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1325 (8th Cir.1984).

HCI contends that the phrase "style freeze" describes the function of the product: it "freezes" into place a style that has been created. HCI argues that the placement of "style freeze" on the label is consistent with the placement of other descriptive phrases such as "hair spray," "styling gel," and "spray gel," on other of HCI's products in the SALON SELECTIVES line. There is no evidence before the Court to permit a factfinder reasonably to find that the public would *not* view the phrase "style freeze" as descriptive of the purpose or function of HCI's product. Indeed, the marketing director for DowBrands, Peter Carey, testified that he believes HCI chose the phrase "style freeze" to be descriptive and that the word "style" is, in this instance, "being used as part of a descriptor, which describes the functionality of the product." Carey Depo. at 61, 64 (Welch Aff., Tab A). In the absence of contrary evidence, the Court concludes that HCI has succeeded in establishing that the allegedly infringing phrase "style freeze" is descriptive of the product in question.

■ Third, HCI must show that it is using the phrase "style freeze" fairly and in good faith *only* to describe its goods to users. DowBrands contends that the availability of other terms to describe HCI's product raises a question of the defendant's good faith, as does HCI's admitted awareness of Dow-Brand's family of marks. HCI argues that both of these arguments are insufficient to raise an issue regarding HCI's good faith.

The "good faith" element of the fair use defense "has not often been litigated." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 11.17[5], at 11–87 (3d ed. 1993).

> It has been held that an inference of a lack of good faith may be drawn from (1) defendant's intentional breach of an agreement not to use the disputed mark; or (2) defendant's use with the intent to 'trade upon and dilute the good will' represented by the plaintiff's mark."

*Id.* at 11–87 to 11–88 (footnotes omitted). The Court concludes that the evidence of HCI's prior knowledge and awareness of plaintiff's STYLE marks is sufficient to create a genuine issue of material fact with respect to the issue of good faith. HCI responds that it has no desire or intention to trade upon the good will of DowBrands' STYLE products in light of the different sectors of the hair care market which they target. Viewing all the evidence in the light most favorable to the plaintiff, however, the Court finds that a reasonable fact finder could infer—although that inference is not strong—that HCI intended to trade upon the good will of the STYLE marks. As intent must often be established through circumstantial evidence and an assessment of credibility, the Court concludes that a genuine issue of material fact exists with respect to HCI's intent.

In summary, although HCI has succeeded in establishing that its use of the phrase "style freeze" is a non-trademark use which describes HCI's product, a genuine issue of material fact remains as to whether HCI's use of that phrase was made in good faith.

### III. Likelihood of Confusion

■ The Court also notes that a fair use defense cannot be maintained if there is a likelihood that consumer confusion would result from defendant's good faith use of the allegedly infringing term. *Cullman Ventures*, 717 F.Supp. at 134; 1 *McCarthy on Trademarks and Unfair Competition*, § 11.17[3], at 11–80 ("[b]ecause the paramount goal of the law of trademarks is to

prevent likely confusion, a showing of likely confusion should trump a 'fair use.'"); *see also* Restatement (Third) of Unfair Competition, § 28, cmt. b (Tentative Draft No. 3, 1991) (the extent of likely or actual confusion is an "important factor in determining whether a use is fair"). For the reasons set forth below, the Court concludes that a genuine issue of material fact exists with respect to the issue of likelihood of confusion.

 The key inquiry in any infringement action is whether the more recent mark so resembles the registered mark that its use is 'likely to cause confusion, or to cause mistake or to deceive.' *Woodroast Systems,* 793 F.Supp. at 915 (quoting 15 U.S.C. § 1114(1)). The following factors are relevant to an analysis of whether a likelihood of confusion exists:

(1) The strength of the infringed mark;

(2) The alleged infringer's intent to pass off its goods as those of another;

(3) Whether the type of good involved, and its costs and conditions of purchase, tend to provide consumers with an opportunity to eliminate any confusion that would otherwise exist;

(4) Whether the marks, examined as a whole, are similar;

(5) The degree to which the products compete with one another; and

(6) Evidence of actual confusion.

*WSM, Inc.,* 724 F.2d at 1329; *Woodroast Systems,* 793 F.Supp. at 915. Likelihood of confusion is a factual determination, made upon consideration of the above-listed factors. *Vitek Systems, Inc. v. Abbott Labs.,* 675 F.2d 190, 192 (8th Cir.1982).

The first factor, the strength of the infringed mark, determines the degree of protection that mark is entitled to receive. The Court concludes, upon a review of the submissions of the parties, that a genuine issue of material fact exists as to whether Dow-Brand's STYLE marks are descriptive or suggestive. With respect to the final element, evidence of actual confusion, HCI relies upon the results of a market survey to demonstrate that there is no actual confusion between its "style freeze" product and Dow-Brands' line of STYLE products. The Court concludes that DowBrands has raised a genuine issue of material fact as to the adequacy of the questions asked in that survey. For the foregoing reasons, the Court will deny defendant's motion for summary judgment on the issue of likelihood of confusion.

### Conclusion

Accordingly, based on the foregoing, and all the files, records and proceedings herein, **IT IS ORDERED** that

(1) the plaintiff DowBrands, L.P.'s Motion for Partial Summary Judgment (Doc. No. 31) is **DENIED,** and

(2) the defendant Helene Curtis, Inc.'s Cross Motion for Summary Judgment (Doc. No. 36) is, in all respects, **DENIED.**