**ESQUIRE, Inc. v. MAIRA.**

**Civ. A. No. 3793.**

United States District Court
Middle D. Pennsylvania.

Dec. 6, 1951.

Charles H. Welles, III (of Welles & Mackie), Scranton, Pa., Harold R. Medina, Jr., New York City, for plaintiff.

Irving L. Epstein, Scranton, Pa., for defendant.

WATSON, Chief Judge.

This is a suit for an alleged infringement of a trade-mark and unfair competition. The Plaintiff is the publisher of "Esquire" Magazine and seeks to enjoin the Defendant, Samuel Maira, from using the name "Esquire" in connection with a men's clothing store operated by the Defendant in the City of Pittston, Pennsylvania, under the name "Esquire Shop". Plaintiff has withdrawn its original request for damages, costs and attorneys' fees.

The case was tried without a jury and the Court makes the following special findings of fact:

1. The Plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Delaware with its principal places of business in Chicago, Illinois and New York City, New York.

2. The Defendant is a citizen and resident of the State of Pennsylvania.

3. The amount in controversy, exclusive of interest and costs, exceeds $3,000.00.

4. Since 1933, Plaintiff and its immediate predecessor, Esquire Publishing Company, have been in the business of publishing a magazine called "Esquire", subtitled "The Magazine for Men", and also a trade magazine called Esquire's "Apparel Arts".

5. The Plaintiff's predecessor, Esquire Publishing Company, was granted a Trade Mark, Number 313,768, by the United States Patent Office on June 5, 1934, for the word "Esquire" for use on its monthly publication.

6. "Esquire" magazine was at first a men's fashion magazine published for the

consumer, but to be sold only through the men's stores. Demand for the magazine was great and so it was also placed on the newsstands.

7. "Esquire" magazine was expanded in scope to include articles and stories, photographs, cartoons, and drawings, all with a definite masculine flavor.

8. 10 to 20% of the editorial content of "Esquire" magazine is still devoted to men's fashions.

9. A considerable portion of the advertising in "Esquire" magazine pertains to men's wearing apparel, ranging from a high of 47.42% of total advertising in 1941 to a low of 30.49% in 1950.

10. "Esquire" magazine has acquired a wide and favorable reputation as an authority on men's fashions.

11. The distribution of "Esquire" magazine is general and extensive and has acquired much popularity with men throughout the country.

12. The average net paid circulation of "Esquire" magazine has risen from 149,680 copies in 1934 to 790,256 copies in 1950.

13. As an adjunct to its magazines, Plaintiff does promotional work in men's wearing apparel and accessories.

14. Plaintiff has a working arrangement with manufacturers who advertise in "Esquire" magazine, whereby Plaintiff supplies the manufacturers with window display cards with their ads affixed to them, which the manufacturers in turn send out to their retail customers for display in their store windows. The cards will generally have written across the top the words "You saw it in Esquire", accompanied by a reproduction of the familiar dapper, bulbous-eyed little gentleman called "Esky", who appears on the cover of "Esquire" Magazine.

15. Plaintiff also prepares tags for manufacturers who advertise in "Esquire" to place on their products. The tags also carry a reproduction of "Esky" and also carry the words "As Advertised in Esquire".

16. Plaintiff distributes millions of the above window display cards and tags to manufacturers who advertise in "Esquire".

17. Plaintiff also promotes and exploits fashions appearing in "Esquire" by tying them in with retail establishments throughout the country. Plaintiff prepares window display material for retail stores, direct mail material which stores can mail to customers, and mats for advertising which may be used in the local newspapers.

18. Plaintiff also runs advertisements of its own in newspapers and magazines and sends mail material directly to the public, calling attention to various aspects of "Esquire" which pertain to men's fashions.

19. One of the fashion promotion ideas of the Plaintiff is that of the familiar "Mr. T", which was designed to stimulate the sale of men's clothing with a new kind of fashion—one which was supposed to make men look tall, thin, and trim. Plaintiff first ran fashion pages of "Mr. T" in its trade magazine "Apparel Arts" in July, 1950, and then followed it up in the "Esquire" magazine issue of October, 1950. As part of the "Mr. T" promotion, Plaintiff supplied window display cards, tags, stickers, advertisement materials and direct mail material to approximately 800 men's retail stores throughout the country.

20. The tie-in of the promotion work with "Esquire" magazine has helped to introduce new fashions, styles, trends, and ideas in the field of men's apparel.

21. No magazines prior to "Esquire", or at the present time, perform the same promotional work in men's fashions.

22. Most of the promotional material is distributed to the manufacturers and retailers free of charge.

23. Plaintiff maintains a promotion department in its organization which prepares this material. Thirty-two people are engaged in promotional work in Plaintiff's offices in Chicago and New York City.

24. Promotion expenses, which include the cost of promoting the "Esquire" magazine as well, have risen from $49,904 in 1933, to $1,014,669 for the fiscal year of 1950.

25. The Defendant, Samuel Maira, is the owner and operator of a men's clothing and furnishings store at 66 North Main Street, Pittston, Pennsylvania, and for ap-

proximately the past 3 years has owned and operated said store under the name of "Esquire Shop".

26. Until March or April of 1951, the large sign above Defendant's store carried the name "Esquire Shop" with the word "Esquire" being written in the distinctive script which Plaintiff has used on its magazines and for which it has received a Trade Mark from the United States Patent Office. In March or April of 1951, the sign was repainted to read "Sam Maira's Esquire Shop, Style Creators", with the word "Esquire" now appearing in block lettering instead of the distinctive script.

27. Defendant's store window contains a small sign in the shape of an artist's palette with the words "Esquire Shop, Style Creators" appearing thereon. The word "Esquire" is written in the distinctive script employed by the Plaintiff on its magazines.

28. Defendant displays the words "Esquire Shop" on its store bags and also in its advertisements in the local newspapers.

29. Defendant places labels in some of the clothing he sells, which labels read "Esquire Shop".

30. Defendant has kept copies of "Esquire" Magazine in his store, along with other magazines, for customers to read.

31. Defendant had seen and read issues of "Esquire" magazine prior to the time he opened his store, the "Esquire Shop".

32. Defendant on April 30, 1950, advertised in a local newspaper to the effect that he was not connected with any organization bearing a similar title to the "Esquire Shop", nor did he pattern his suits and shirts after ideas propounded by any national magazine.

33. Plaintiff has not sponsored or licensed the Defendant to use the name "Esquire Shop".

34. Plaintiff sent letters to Defendant beginning in October, 1948, and continuing on into 1950, asking Defendant to discontinue the use of the name "Esquire Shop".

35. The Plaintiff has built up extensive good-will in the field of men's fashions under its trade-mark "Esquire".

36. Defendant deliberately chose the name "Esquire Shop" with knowledge of the reputation which "Esquire" magazine had acquired in the field of men's fashions and thereby sought to trade on and take unfair advantage of the magazine's fame, reputation and goodwill.

37. From the evidence in this case, the Court finds that the name "Esquire Shop" is likely to generate a false belief or impression in the minds of the consuming public that the Defendant's store has been approved, endorsed or sponsored by Esquire, Inc., as a style and fashion center of men's wearing apparel, or that the clothes sold therein have been advertised or mentioned in "Esquire" magazine.

## Discussion

The jurisdiction of the court is not disputed and may rest either upon the allegation of infringement of a registered trademark, Armstrong Paint & Varnish Works v. Nu-Enamel Corp. et al., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195, or upon diversity of citizenship. It is immaterial whether the federal law or Pennsylvania law controls, for the law on unfair competition as announced by the Pennsylvania courts is in no wise different from that laid down in the federal courts. See B. V. D. Co. v. Kaufmann & Baer Co., 1922, 272 Pa. 240, 116 A. 508; Thomson-Porcelite Co. v. Harad, 1947, 356 Pa. 121, 51 A.2d 605; Consolidated Home Specialties Co. v. Plotkin, 1947, 358 Pa. 14, 55 A.2d 404; Safeway Stores, Inc., v. Sklar, D.C.E.D.Pa., 1947, 75 F.Supp. 98, 102.

At the outset it is to be noticed that the Plaintiff and the Defendant are not in direct competition with each other. Plaintiff is a publisher of "Esquire" magazine which caters and appeals to men; Defendant owns and operates a men's clothing store. This poses the question of whether or not Plaintiff is to be denied injunctive relief on this account.

If Plaintiff based his suit solely on the theory of infringement of its trademark under the Trade-Mark Act, 15 U.S. C.A. § 1114, this Court would have to deny Plaintiff any relief. Plaintiff secured its

trade-mark "Esquire" for use on its magazines. It must be conceded that retail clothing stores are not of the same descriptive properties or of the same class of goods as those set forth in the trade-mark registration, namely, magazines. The Court finds that despite Plaintiff's work in the promotion of men's fashions there was no technical infringement of Plaintiff's trademark. Hanson et al. v. Triangle Publications, Inc., 8 Cir., 1947, 163 F.2d 74; Triangle Publications, Inc., v. Rohrlich et al., 2 Cir., 1948, 167 F.2d 969.

This does not, however, preclude Plaintiff from securing relief on the theory of unfair competition, for Plaintiff's use of its trade-mark "Esquire" has acquired a secondary meaning indicative in the public mind of a relationship between "Esquire" magazine and men's wearing apparel, styles, trends, and fashions, and this secondary meaning was acquired prior to the time Defendant began to use the name "Esquire Shop". Having acquired a secondary meaning, Plaintiff is entitled to protection of its reputation against the use of that name by others even in a noncompeting business, whenever such use is likely to cause confusion in the minds of the public as to the origin of the goods, or as to sponsorship or approval of the goods or the business establishment. Hanson et al. v. Triangle Publications, Inc., supra; Triangle Publications, Inc., v. Rohrlich, supra; Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972.

While there is no showing that any member of the public has been misled into the belief that Defendant's store has been approved, endorsed or sponsored by the Plaintiff, it is probable that such a false belief will be generated. Evidence of specific instances of confusion is unnecessary. La-Touraine Coffee Co., Inc., v. Lorraine Coffee Co., Inc., 2 Cir., 1946, 157 F.2d 115; Swarthmore Classics, Inc., v. Swarthmore Junior, D.C.S.D.N.Y., 1949, 81 F.Supp. 917. The test is whether the public is likely to be deceived. Best & Co., Inc., v. Miller, 2 Cir., 1948, 167 F.2d 374, 377.

This Court finds from the evidence that a men's retail clothing store bearing the name "Esquire Shop" is likely to generate a false belief or impression in the minds of the consuming public that the store has been approved, endorsed, or sponsored by "Esquire" magazine as a style and fashion center of men's wearing apparel, or that the clothes sold therein have been advertised or mentioned in "Esquire" magazine.

It is true that the Defendant does not and probably will not deprive the Plaintiff of trade in the sale of its magazine, but, nevertheless, Defendant's use of the name "Esquire Shop" has enabled the Defendant to get a free ride upon the good will and reputation built up by the Plaintiff, and to that extent the value of Plaintiff's property right in its trade-mark is diluted and rendered less valuable.

Nor does the disparity in the size of the respective businesses bar injunctive relief. Stork Restaurant, Inc., v. Sahati et al., 9 Cir., 1948, 166 F.2d 348. To allow the Defendant to use the name "Esquire Shop" merely because it is humble in its field of operations would set a precedent which would threaten to nibble away or dilute the value of the goodwill which Plaintiff has established in the field of men's wearing apparel.

The Court is of the opinion that this case is ruled by the cases involving the magazine "Seventeen", to wit, Hanson et al. v. Triangle Publications, Inc., 8 Cir., 1947, 163 F.2d 74, supra; and Triangle Publications, Inc., v. Rohrlich et al., 2 Cir., 1948, 167 F.2d 969, supra. Plaintiff in those actions, under the registered trade-mark "Seventeen", published a magazine of fashions and other interests for teen-age girls. In the first suit, the defendant, Hanson, manufactured dresses under the name "Seventeen", and in the second suit defendant, Rohrlich, manufactured girdles under the name "Miss Seventeen". In both cases, the respective Courts of Appeal held that the word "Seventeen", as used by the plaintiff, had acquired a secondary meaning, and that its use by the defendants was likely to cause a confusion as to sponsorship by plaintiff, and the public might erroneously believe that defendants' dresses and girdles were advertised in or sponsored by

the magazine and that plaintiff's reputation and good will would thereby be injured.

■ Defendant, however, urges that Plaintiff should not have equitable relief on the theory that Plaintiff comes into court with unclean hands, for the magazine "Esquire" contains drawings, pictures, and cartoons which are, to use the language of counsel for the Defendant, "salacious, suggestive, bawdy and invariably showing females in various degrees of disattire and containing innuendoes referring to sex". As to this, the Court need only state that the character or quality of the literature is not involved in this case. Esquire, Inc., v. Esquire Bar, D.C.S.D.Fla., 1941, 37 F.Supp. 875. The cartoons, pictures and drawings published in "Esquire" are only incidental and are not relevant to the issues at hand. These cartoons, pictures and drawings unquestionably appeal to the taste of many men, and they may very well account for a substantial portion of the magazine's popularity, but it cannot be disputed that "Esquire" magazine has also acquired a wide and favorable reputation as an authority on men's fashions, and, in which field, it is the opinion of the Court, the word "Esquire" has taken on a secondary meaning.

### Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter involved in the proceeding.

2. Plaintiff's trade-mark, "Esquire", is a valid one and is in force and effect.

3. Plaintiff's trade-mark is a valuable asset and entitled to protection in the courts.

4. Defendant's use of the name "Esquire Shop" in connection with his men's clothing store is no technical infringement of Plaintiff's trade-mark "Esquire".

5. Plaintiff's trade-mark, "Esquire", has acquired a secondary meaning indicative in the public mind of a relationship between "Esquire" magazine and men's wearing apparel, styles, trends, and fashions, and this secondary meaning was acquired prior to the time Defendant began to use the name "Esquire Shop".

6. The trade-mark "Esquire" having acquired a secondary meaning, Plaintiff is entitled to protection of its reputation against the use of that name by the Defendant.

7. Defendant's use of the name "Esquire Shop" as the name of his store constitutes unfair competition with respect to the Plaintiff.

8. Plaintiff is entitled to an injunction against Defendant's continued unfair competition.

9. Plaintiff is not entitled to damages, costs or attorneys' fees.

10. A decree will be signed permanently enjoining the Defendant, his agents, attorneys, or employees from in any way, form or manner simulating or making any use whatsoever of Plaintiff's trade name or trade-mark "Esquire"; with the proviso, that such decree shall not become effective until 10 days after its date in order that Defendant may have a reasonable time to take such steps as may be necessary to comply with the decree.