KIMBERLY KNITWEAR INC., Plaintiff,

v.

KIMBERLEY STORES INCORPORATED
OF MICHIGAN et al., Defendants.

Civ. A. No. 6152.

United States District Court,
W. D. Michigan.

Sept. 3, 1971.

Lloyd A. Heneveld, Price, Heneveld, Huizenga & Cooper, Grand Rapids, Mich. (David Goldberg, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel) for plaintiff.

Robert W. Dilley, Dilley & Dilley, Grand Rapids, Mich., for defendants.

MEMORANDUM OPINION

FEIKENS, District Judge, sitting by designation.

Plaintiff, Kimberly Knitwear, Inc., brings this action against the defendants, Kimberley Stores Incorporated of Michigan; Homer Hayden's Inc.; and Herman Grossman, alleging trademark infringement and unfair competition.

Plaintiff, organized in 1946 in New York, is a manufacturer and wholesaler of women's high-quality knitwear and operates nationally. It has expended large sums annually to advertise the name Kimberly (adopted in 1947) in women's fashion magazines, so that its name has become synonymous with high quality in women's clothing. It has registered "Kimberly" and "Kims" as trademarks.

Defendants are retailers selling women's apparel and accessories in six Michigan cities. These apparel items are of a lesser quality than plaintiff's. In 1963, defendants, in a plan to upgrade their department stores, closed and remodeled several stores. They renamed four of these stores *Kimberley's*. These stores, located in Fremont, Grand Haven, Niles and Charlotte, are in areas adjacent to cities with central shopping areas which carry plaintiff's merchandise. Fremont and Grand Haven are near Muskegon, Niles near South Bend, and Charlotte near Lansing. Plaintiff does sell its products through a distributor-store in Grand Haven. Thus, shoppers in cities with defendants' stores are customers or potential customers for products manufactured by plaintiff. This infringement on plaintiff's mark came to plaintiff's attention in 1969, and plaintiff brought suit to enjoin this use of its mark. During the pendency of this action, defendants changed the corporate name in November 1969 from Kimberley Stores Incorporated of Michigan to Kimleys Incorporated of Michigan and the use of the name Kimberleys to Kimley's in December 1969.

The reason given by the defendants for this change in name was "economically it was an easy way" and "it was less of a trauma as far as the public is concerned." Defendants' purpose was to "preserve the image of what we were able to accomplish."

Plaintiff here seeks an injunction prohibiting defendants from use of the name Kimberley, Kimberleys, Kimley or Kimley's.

This action arises under Sections 2 and 32 through 36 of the Trademark Act of July 5, 1946, as amended—known as the Lanham Act. (15 U.S.C. §§ 1052, 1114–1118); jurisdiction of the court is founded on Section 39 of said Act (15 U.S.C. § 1121) and on Section 1338 of the Judicial Code (28 U.S.C. § 1338).

Plaintiff is the owner of the following registered trademarks: "Kimberly," Reg. No. 603,980 dated March 29, 1955; "Kimberly" and design Reg. No. 774,029 dated August 4, 1964; "Kimberly" and design Reg. No. 895,569 dated July 28, 1970; and "Kims," Reg. No. 607,321 dated June 14, 1955. These marks have become uncontestable under Section 15 of the Trademark Act of 1946, 15 U.S.C. § 1065, and are conclusive evidence of Kimberly's right to use them. 15 U.S.C. § 1065.

■ The test of trademark infringement is the likelihood of confusion:

"Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or *colorable imitation* of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive * * * shall be liable in a civil action by the registrant for the remedies hereinafter provided." Section 32, Trademark Act of 1946 (15 U.S.C. § 1114).

■ Defendants' appropriation of the name Kimberley was, as conceded by them, a clear infringement. They used the name Kimberleys on its stores, advertising, receipts and packaging materials—all in a script similar to that used by the plaintiff. This clearly constituted bad faith. They insist, however, that they are entitled to continue the use of the name "Kimleys." It appears, however, that defendants have attempted to retain the good will they have appropriated by the use of plaintiff's name through the use of a name which, while perhaps not confusingly similar, is so reminiscent of the plaintiff's that it continues to accord the defendants some of the same unfair advantage they have previously enjoyed. This they may not do.

■ While bad faith is not necessary to prove infringement, Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U.S. 537, 549, 11 S.Ct. 396, 34 L.Ed. 997 (1891); Saxlehner v. Seigel-Cooper Co., 179 U.S. 42, 21 S.Ct. 16, 45 L.Ed. 77 (1900), it is relevant to the quantum of proof necessary to prove such infringement. In Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 119 F.2d 316 (6th Cir. 1941), rev'd. on other grounds, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942), the court recognized that:

> "Where a person uses the business symbol or label of another with the fraudulent purpose of obtaining business which belongs to the other, there will be no injustice if the court assumes the label or symbol so chosen accomplishes the purpose although the resemblance is slight. If one intends that the name, symbol or label so chosen should be mistaken for that of another, it is fair to assume he will use them to promote that belief or purpose." 119 F.2d at 324.

■ Defendants' prior bad faith is also relevant in characterizing the second name chosen by them. Admittedly, defendant attempted to choose a name as close as they could to the name previously chosen by them. They did this by removing the middle syllable in "Kimberleys" so that it read "Kimleys."

In Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353 (6th Cir. 1930), the plaintiff had obtained an injunction against the defendant and was seeking to enforce a later infringement by defendant. Here plaintiff has not yet obtained an injunction but is clearly entitled to one. The court there stated that while defendant's use might be acceptable to a newcomer, "* * * we think [the defendant] was disqualified to claim the full competitive rights which might be open to a stranger." That court explained its reasoning thus:

> "The due protection of trademark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves." 41 F.2d at 354.

See also, Detroit Stamping Co. v. West Point Mfg. Co., 122 F.Supp. 741 (E.D. Mich.1954), rev'd on other grounds, 222 F.2d 581 (6th Cir. 1955); Eskay Drugs v. Smith, Kline & French Laboratories, 188 F.2d 430 (5th Cir. 1951).

■ Plaintiff's interest in its trademark is a property right. Confusion alone is not the only result of trademark infringement. A trademark owner is entitled to protection against anyone who disturbs its exclusive use, regardless of lack of market competition. Any use by another, even marginally, inevitably dilutes the value of the trademark and results in unfair competition. By continually offering a superior product, plaintiff has built up extensive good will, both nationally and in Michigan. The name "Kimberley" symbolizes that good will. Here defendants by just appropriating "Kimberleys" and then switching to "Kimleys," when challenged, raise that breach. While the name similarity may have lessened, defendants are still competing unfairly by

attempting to preserve the image of what they had been able to accomplish.

It is the good will and reputation of plaintiff which the law seeks to preserve as well as curtailment of confusion of the trademarked products.

"The gravemen of a dilution complaint is that the continuing use of a mark similar to the plaintiff's will inexorably have an adverse effect upon the value of plaintiff's mark, and that if he is powerless to prevent such use, the plaintiff's mark will eventually be deprived of all distinctiveness * * *. This injury differs materially from that arising out of orthodox confusion. * * * Such confusion creates an immediate injury, while dilution is a cancer which, if allowed to spread, will inevitably destroy the advertising value of the mark." R. Callman, Unfair Competition, Trademarks and Monopolies, (3rd ed. 1967) § 84.2.

Thus, the use of the name "Kimleys" by defendants constitutes unfair competition and does injury to plaintiff's property right in its mark.

There is no "merit in the contention that a court of equity will not afford protection to the plaintiff's trade-mark or prevent its good will from being nibbled away by unfair competitors." Stork Restaurant, Inc. v. Sahati, 166 F. 2d 348, 357 (9th Cir. 1948), quoting Cleo Syrup Corp. v. Coca-Cola Co., 139 F.2d 416 (8th Cir. 1943).

In Esquire, Inc. v. Maira, 101 F.Supp. 398 (M.D.Pa.1951), plaintiff published Esquire magazine; defendant was the owner of a small men's clothing store. The court held that despite the lack of market competition, plaintiff was entitled to relief on the basis of unfair competition because to allow defendant to continue its use "would set a precedent which would threaten to nibble away or dilute the value of the goodwill which Plaintiff [had] established * * *." 101 F.Supp. at 402.

For these reasons, defendants' use of the name "Kimleys" as well as Kimberley, Kimberleys, and Kimley, must be en-joined from further use by the defendants.

 As respects plaintiff's petition for an order for accounting of profits, this lies within the discretion of the court. In exercising that discretion, it would appear to the court that plaintiff has not as yet suffered substantial monetary injury. The restraining order herein entered will protect plaintiff in the future, where the threat of loss appears to be. This opinion is entered in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate order may be presented.