**VINING INDUSTRIES, INC., Plaintiff,**

v.

**M.B. WALTON, INC., Defendant.**

No. C–3–96–314.

United States District Court, S.D. Ohio, Western Division.

April 30, 1997.

Thomas William Flynn, Biebel & French, Dayton, OH, for Vining Industries Inc, plaintiff.

James D Zalewa, Leydig, Voit & Mayer, Chicago, IL, Gary William Gottschlich, Gottschlich & Portune, LLP, Dayton, OH, for MB Walton Inc, defendant.

## OPINION ON SCOPE OF PRELIMINARY INJUNCTION AND AMOUNT OF BOND

RICE, Chief Judge.

On March 20, 1997, this Court entered a Decision in which it sustained Plaintiff's Motion for Preliminary Injunction. *See* Doc. # 22. The Plaintiff had sought such injunctive relief, prohibiting the Defendant from using the designation or mark "TWIST MOP" on a type of mop manufactured and sold by the latter. Since 1991, the Plaintiff has manufactured and sold a type of self-wringing, string mop under the trademark "TWIST 'N MOP."[1] In 1996, the Defendant, a competitor of the Plaintiff, began marketing a similar mop under the name "TWIST MOP." This litigation, in which the Plaintiff alleged, *inter alia*, that the Defendant's use of the phrase "TWIST MOP" violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), followed shortly thereafter. This case is now before the Court for a determination on the scope of the preliminary injunction, as well as the amount of the bond Plaintiff will be required to post to secure the preliminary injunction awarded by this Court. On April 15, 1997, the Court conducted an oral and evidentiary hearing on these issues, and the parties have submitted post-hearing memoranda. *See* Docs. # 28 and # 29. Herein, the Court rules upon those questions, addressing first the issue of the scope of the injunction.

1. The Plaintiff manufactures and markets household and commercial cleaning tools.

*I. Scope of the Injunction*

Rule 65(d) of the Federal Rules of Civil Procedure provides:

> (d) *Form and Scope of Injunction or Restraining Order.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

In its Decision of March 20th, this Court focused upon the Defendant's prominent use of the words or the phrase "TWIST MOP" on the front of its packaging and concluded that it was being utilized as a trademark and that a likelihood of confusion was created thereby. However, the Defendant also employs the phrase "twist mop" on its packaging in other locations and in other forms. Thus, the primary question is whether Defendant will be entitled to use the phrase "twist mop" on its packages, in those other forms, as well as in its television commercials. Additional questions which must be resolved are whether the Defendant will be required to recall its products which have the infringing trademark on the package and the timing of the change of its packaging. Initially, the Court will discuss the continued use of the phrase "twist mop," following which it will turn to the other issues.

*A. The Defendant's entitlement to continued use of the phrase "twist mop"*

To fully appreciate the parties' arguments regarding the Defendant's contin-

ued use of the phrase "twist mop," the Court will initially describe the Defendant's current packaging, an example of which was introduced during the April 15th hearing as Defendant's Exhibit B. The Defendant's package is a sleeve which is placed on the head of the mop. The phrase "twist mop" is used four times on that sleeve, twice on the front and twice on the back. The most prominent use is on the front, where the words "TWIST MOP" are centrally located, in nearly vertical lettering, printed in somewhat twisted fashion. This phrase is printed in white lettering which is at least twice as large as any other printing on the package. The package has twisting, transparent portions which run along the sides of the phrase "TWIST MOP," that tend to frame it and, thus, to set it off from the remainder of the printing on the package. In addition, the white lettering of the phrase "TWIST MOP" is printed on top of dark or navy blue "swish," which has the effect of further highlighting the phrase "TWIST MOP."[2] The whole design gives a twisting effect. In its Decision of March 20, 1997, the Court concluded that, in that instance, the phrase "TWIST MOP" was used as a trademark. *See* Doc. # 22 at 3–4. Near the bottom of the front of the sleeve the phrase "The Easiest Twist Mop" is printed horizontally in yellow lettering, with "The Easiest" printed above the phrase "Twist Mop," with the word "Easiest" in printing approximately twice as large as that used in the other three words. At the top of the back of the sleeve, the phrase "TWIST MOP" appears in similar fashion to its prominent, trademark use on the front, albeit horizontally and in much smaller lettering than the prominent, trademark use of that phrase which appears on the front of the sleeve.[3] Immediately below,

---

2. The sleeve's predominate color is royal blue. Presumably, the "swish" is meant to symbolize the imprint made by a wet mop.

3. The phrase "TWIST MOP" is printed in the same white, twisted lettering and is highlighted by the dark or navy blue "swish."

the phrase "THE EASIEST TWIST MOP" is printed in yellow print, approximately one-half the size of the print utilized in the words "TWIST MOP" immediately above.

Defendant argues that its use of the words "twist mop," in relatively small lettering and as part of the comparative phrase, "the easiest twist mop," will constitute a fair use and that, therefore, it cannot be enjoined from such use. In addition, Defendant argues that it should not be enjoined from using that phrase in its television commercials. Plaintiff, on the other hand, argues that the safe-distance rule and the principle that the fair use defense and a finding of substantial likelihood of confusion cannot coexist provide a sufficient basis for enjoining the continued use of the phrase "twist mop" by the Defendant, in the manner in which it proposes. As a means of analysis, the Court will initially discuss, together, the Defendant's contention that its proposed, continued use of the phrase "twist mop" will constitute a fair use and the Plaintiff's argument that fair use cannot coexist with a finding of likelihood of confusion, following which it will address the safe-distance rule.

### 1. Fair use and likelihood of confusion

In *WCVB–TV v. Boston Athletic Association,* 926 F.2d 42, 46 (1st Cir.1991), then Chief Judge Breyer discussed the fair use defense: [4]

> In technical trademark jargon, the use of words for descriptive purposes is called a "fair use," and the law usually permits it even if the words themselves

also constitute a trademark. *See* 15 U.S.C. § 1115(b)(4) (statutory fair use defense); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 796 (5th Cir.1983) (fair use established if mark descriptive, not used in trademark sense, and used in good faith).

To prevail on the fair use defense, the defendant must establish that it has used the trademark, in good faith, to describe its product and otherwise than as a trademark. *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 951 (7th Cir.1992). In its Decision of March 20, 1997, the Court focused upon the manner in which the phrase "TWIST MOP" was vertically printed, in prominent fashion, on the front of the sleeve and concluded that it was being used as a trademark. Doc. # 22 at 3–4. Therefore, the Court rejected the Defendant's reliance upon the fair use defense. *Id.* Now, however, the Defendant proposes to use the phrase "twist mop" in a different manner. Pursuant to the injunction, the use of the phrase "twist mop" as a trademark will be deleted. As the Court understands, Defendant will use the words "twist mop" on its packaging, only as part of the phrase, "the easiest twist mop." *See* Doc. # 29 at 1.[5] Since such proposed usage is vastly different than the use upon which the Court previously focused, the conclusion relating to the fair use defense contained in the Court's Decision of March 20th does not resolve the current question. Therefore, the Court must decide whether this proposed use of the phrase "twist mop" will be a good faith attempt to describe its

---

**4.** The fair use defense is predicated upon the principle that no one should able to appropriate descriptive language by registering a trademark. *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 951 (7th Cir. 1992) (citing *William R. Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161 (1924)).

**5.** As is noted above, the Defendant uses the phrase "twist mop" in four locations on its current package, only two of which are part of the phrase, "the easiest twist mop." Obvi-

ously, the prominent use of the phrase "TWIST MOP" on the front of the package is as a trademark and, therefore, does not constitute a fair use. Based upon the reasoning set forth in its Decision of March 20th, the Court concludes that the similar use of that phrase on the top of the back of the package is also as a trademark and is not a fair use. Therefore, throughout the remainder of this Opinion, the Court will focus only upon the use of the words "twist mop" as part of the phrase, "the easiest twist mop."

product and, accordingly, used otherwise than as a trademark. *Sands, supra.* There is no evidence before the Court which would establish that the Defendant's use of the phrase "twist mop" is not in good faith. Indeed, in the Decision of March 20th, the Court found that the Defendant did not adopt the phrase "TWIST MOP" with the intent of trading on the Plaintiff's goodwill. Doc. # 22 at 14–15. The Court noted that the phrase "TWIST MOP" was not the Defendant's first choice for a name for its product; rather, "the Defendant preferred to utilize TWIST–O–MATIC, EASE–Z–MATIC or WRING–O–MATIC, none of which could be used because there were trademark problems with each.[6] In addition, Defendant's proposed use of the phrase "twist mop" will be descriptive of the product to which it refers. The product in question is a self-wringing mop which one operates by twisting the handle. In other words, it is a mop which one twists.[7] Finally, the proposed use of the phrase "twist mop" will be otherwise than as a trademark.[8] The words "twist mop" will be used on the Defendant's packaging as part of a comparative phrase ("the easiest twist mop"), in lettering which is smaller than much of that which is presently on the sleeve. Moreover, the Defendant's product will be marketed under a new name. Accordingly, the Court concludes that the Defendant's proposed use of the words "twist mop" on its packaging, as part of the phrase "the easiest twist mop," will constitute a fair use for purpose of describing its product.[9]

Nevertheless, the Plaintiff argues that fair use and likelihood of confusion cannot coexist and that, since this Court has found that there was such a likelihood, the Defendant is not entitled to rely upon that defense. In its Decision of March 20th, this Court did find that there was a substantial likelihood of confusion. *See* Doc. # 22 at 5–16. Accepting for present purposes that fair use and likelihood of confusion cannot coexist,[10] such an assumption

---

**6.** The Plaintiff points to evidence that, when the Defendant was developing its twisting, self-wringing mop, it recognized that the Plaintiff's "TWIST 'N MOP" was the number one seller in certain channels of trade; that the Defendant utilized Plaintiff's mop when it (Defendant) designed its mop; and that the Defendant designed its product so that its mop head was interchangeable with the "TWIST 'N MOP." That evidence does not convince the Court that the Defendant acted in bad faith or that its proposed use of "the easiest twist mop" would not be in good faith. As is stated above, the Defendant wanted to name its mop something other than "TWIST MOP." Moreover, during the April 15th hearing, Ronald Tillery testified as to the importance of using the phrase "the easiest twist mop" as a comparative selling feature.

**7.** The Plaintiff argues that the Defendant does not need to use the phrase "twist mop" to describe its product, since there was evidence that other manufacturers of similar mops did not use that phrase. Accepting for present purposes that the Defendant does not need to use that phrase, the Court does not agree with the Plaintiff that a party cannot rely upon the fair use defense, merely because that use is not necessary. The Plaintiff has not cited a case (and the Court knows of none) which supports that proposition.

**8.** The phrase "the easiest twist mop" is printed in yellow lettering on the Defendant's current packaging; however, that does not mean that said phrase is used as a trademark. The Defendant has used that color to print a number of other words and phrases, such as "new," "satisfaction guaranteed," "keeps hands dry" and the directions on the use of the mop.

**9.** During the April 15th hearing, the Defendant proposed to change its packaging by merely printing the prominent, trademark use of the phrase "TWIST MOP," on the front of the sleeve, in somewhat smaller letters. Based upon the Defendant's post-hearing memorandum, the Court concludes that the Defendant has abandoned that proposal. *See* Doc. # 29 at 1. However, if not abandoned, such a utilization of the phrase "TWIST MOP" could be the type of trademark use which this Court has found to infringe upon the Plaintiff's trademark.

**10.** *See Sunmark, Inc. v. Ocean Spray Cranberries, Inc.,* 64 F.3d 1055, 1059 (7th Cir.1995) (questioning the conclusion of some courts that fair use and likelihood of confusion cannot coexist).

does not resolve the question of whether the Defendant's use of the words "twist mop," as part of a comparative phrase ("the easiest twist mop") and otherwise than as a trademark, will create a likelihood of confusion, since the Court's previous finding was based upon the Defendant's prominent use of the phrase "TWIST MOP" as such a trademark. The Court did not conclude that the Defendant's use of the words "twist mop," as part of that comparative phrase and otherwise than as a trademark, would create a likelihood of confusion. Therefore, the Court must now determine whether the continued use of the words "twist mop," as part of the phrase "the easiest twist mop," will cause a likelihood of confusion, when the infringing use of the phrase "TWIST MOP" is deleted from the Defendant's packaging. To answer that question, the Court must turn to the familiar eight factors a court must apply to determine whether there is a likelihood of confusion, to wit:

1. the strength of the plaintiff's mark;
2. the relatedness of the services;
3. the similarity of the marks;
4. the evidence of actual confusion;
5. the marketing channels used;
6. the likely degree of purchaser care;
7. the defendant's intent in selecting the mark; and
8. the likelihood of expansion of the product lines.

*Champions Golf Club, Inc. v. Champions Golf Club*, 78 F.3d 1111, 1116 (6th Cir. 1996) *See also, Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988); *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982).

In its Decision of March 20th, the Court found that "TWIST 'N MOP" is a suggestive mark, entitled to protection without proof of secondary meaning, although not a particularly strong mark. Doc. # 22 at 6–11. With respect to the second factor (relatedness of services), the Sixth Circuit has said that, when the parties are direct competitors, there is a likelihood of confusion if their trademarks are sufficiently similar. *Champions*, 78 F.3d at 1118. In its Decision of March 20th, the Court found that the parties' products were in direct competition and that, therefore, confusion was likely if the marks are sufficiently similar. Doc. # 22 at 12. With respect to the third factor (similarity of marks), the Sixth Circuit has said:

> In determining the similarity of marks, a court must determine ... whether the mark will be confusing to the public when singly presented.... A proper analysis of similarity includes examining the pronunciation, appearance, and verbal translation of the conflicting marks.

*Champions*, 78 F.3d at 1118 (citations and internal quotation marks omitted). In its Decision of March 20th, the Court found that the phrase "TWIST MOP" and "TWIST 'N MOP" were virtually identical; however, that finding was based upon the prominent, vertical use of the phrase "TWIST MOP," as a trademark, on the front of Defendant's packaging. The Defendant now proposes to use those two words, not as a trademark but merely as part of the comparative phrase, "the easiest twist mop." A comparison of the pronunciation, appearance and verbal translation of that phrase with "TWIST 'N MOP" leads to the conclusion that there is no similarity between the two. No one reading the phrase "the easiest twist mop" on the package of a mop, with a name different than "TWIST 'N MOP," would believe that he or she was purchasing a "TWIST 'N MOP." There was no evidence of actual confusion presented; therefore, the fourth factor cautions against a finding of likelihood of confusion.[11] The parties use the

---

11. In its Decision of March 20th, the Court focused upon the prominent, vertical, twisting printing of the phrase "TWIST MOP" on the front of the Defendant's packaging. Therefore, the question was whether there was evidence of actual confusion between the Defen-

same marketing channels; therefore, the fifth factor weighs in favor of finding a likelihood of confusion. In its Decision of March 20th, the Court found that the sixth factor, likely degree of purchaser care, weighed in favor of finding a likelihood of confusion, since purchasers were not likely to exercise care in selecting a relatively inexpensive mop. Doc. # 22 at 14. However, given that the Court was focusing upon the Defendant's prominent use of the phrase "TWIST MOP" as a trademark, that finding is not applicable to the present controversy. On the Defendant's former package, the phrase "TWIST MOP" was the most prominent printing exhibited to the purchaser; however, a new name for the Defendant's product will now be the most prominent feature of that product. While the Defendant's packaging will continue to use the phrase "twist mop" as part of a comparative phrase, the lack of care exercised by the consumer will, if anything, weigh against a finding of likelihood of confusion in the future. Since consumers do not exercise a great deal of care when they select mops, a purchaser of Defendant's product is more likely to disregard the words "twist mop," as part of the phrase "the easiest twist mop," than he or she is to read that phrase and, as a result, to think that Defendant's mops are manufactured by the Plaintiff. As is indicated above, the Court found that the Defendant did not adopt the phrase "TWIST MOP" with the intent of deriving benefit from the Plaintiff's mark. However, proof that a defendant has intentionally infringed is not necessary, since a defendant's good intentions do not preclude a finding of likelihood of confusion. *Champions*, 78 F.3d at 1121. Since the parties already directly compete in the sale of their respective twisting, self-wringing mops, the eighth factor, expansion of product lines is not relevant.

In sum, the Plaintiff's mark is suggestive; however, it is not a particularly strong one. Although the parties are direct competitors and use the same marketing channels, "TWIST 'N MOP" is not similar to the phrase "the easiest twist mop," the comparative phrase which the Defendant proposes to employ. Since no factor, other than the strength of the Plaintiff's trademark and the fact that the parties are direct competitors who use the same marketing channels, weighs in favor of finding a likelihood of confusion, this Court, based upon the lack of similarity between the two phrases, finds that the purchaser viewing the Defendant's new package is not likely to be confused about the source of that mop. In other words, even though the phrase "the easiest twist mop" is printed on the Defendant's package, a consumer purchasing a mop manufactured by the Defendant is not likely to think that he or she is purchasing a "TWIST 'N MOP" manufactured by the Plaintiff. Accordingly, this Court finds that the Defendant's use of that phrase will not create a likelihood of confusion.[12]

dant's use of the phrase "TWIST MOP" in that manner and "TWIST 'N MOP." With reference to the issue presently before the Court, the Plaintiff did not present any evidence of such confusion, nor did it present any evidence of actual confusion between "TWIST 'N MOP" and the phrase "the easiest twist mop."

12. In this Opinion, the Court has focused upon the Defendant's packaging, rather than upon its television commercials, which were shown during the April 15th hearing. In those commercials, the phrase "twist mop" is spoken a number of times. In addition, the Defendant's package with the infringing, trademark use of the phrase "TWIST MOP" is shown. Since the Court has concluded that such use of the phrase "TWIST MOP" infringes upon the Plaintiff's trademark, the Court will enjoin the Defendant from showing commercials with the offending packaging. However, the Court does not find that there will be a likelihood of confusion if the phrase "twist mop" is spoken during the commercials. Indeed, if a viewer of those commercials is convinced to purchase a twisting, self-wringing mop, the most likely beneficiary of the mention of the phrase "twist mop" in those commercials will be Plaintiff, whose mop is marketed under the name "TWIST 'N MOP," rather than the Defendant who, as a result of the preliminary injunction, will be required to adopt a new name for its product.

## 2. Safe-distance rule

In *Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353 (6th Cir.1930), the Sixth Circuit discussed the safe-distance rule. Therein, the plaintiff manufactured a special rope used to tow disabled automobiles and had a registered trademark for its product, to wit: Autowline (a combination of auto, tow and line). The defendant manufactured a competing product which it sold under the name Au–Tow–Line. After the District Court had entered an injunction preventing the defendant, its officers and its directors from marketing products with a trademark in the form of either Autowline or Au–Tow–Line, the defendant's general manager began to distribute a similar product under the name Auto–Tow–Line. The plaintiff then brought contempt proceedings against the defendant's general manager. The District Court dismissed the contempt proceeding, concluding that Auto–Tow–Line was merely descriptive and that, therefore, the defendant was entitled to use that phrase despite the plaintiff's trademark. Upon appeal, the Sixth Circuit found it unnecessary to decide whether Auto–Tow–Line was a permissible, descriptive use; rather, that court concluded that the safe-distance rule prevented the defendant from using the phrase, even if it did not prevent others from doing so and, thus, reversed the dismissal of the contempt proceedings, writing:

> The due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line— even if that requirement involves a handicap as compared with those who have not disqualified themselves.

*Id.* at 354. Although *Broderick & Bascom* involved contempt proceedings rather than the issue of the scope of an injunction, the safe-distance principle enunciated therein has been followed by a number of courts when determining how extensive an injunction should be. *See e.g., Chevron Chemical Co. v. Voluntary Purchasing Groups*, 659 F.2d 695, 705–06 (5th Cir. 1981) (directing the District Court to fashion an injunction which will prevent the defendant from retaining the goodwill of the plaintiff which it misappropriated by infringing upon the trade dress of the latter); *Imagineering, Inc. v. Van Klassens, Inc.*, 851 F.Supp. 532 (S.D.N.Y.1994), *affirmed as modified*, 53 F.3d 1260 (Fed. Cir.), *cert. denied*, 516 U.S. 909, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995); *Kimberly Knitwear, Inc. v. Kimberly Stores of Michigan*, 331 F.Supp. 1339, 1341–42 (W.D.Mich.1971) (enjoining defendant from adopting the name "Kimleys" after finding that its use of the name "Kimberley's" infringed upon the plaintiff's trademark "Kimberly"). In *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145 (7th Cir. 1994), the Seventh Circuit stressed that a District Court *may*, in its discretion, require a defendant, which has been found to be an infringer, to adopt a new trademark or trade dress that does not even arguably infringe upon the plaintiff's mark or dress. However, the *Badger Meter* court held that the District Court was not obligated to require a defendant to do so.

▇ Thus, under the safe-distance rule, this Court could enjoin the Defendant from continuing to use the phrase "twist mop," even in a manner which did not infringe upon Plaintiff's rights to the trademark, "TWIST 'N MOP." [13] However, the Court will decline to apply that rule in this case, at this time, to enjoin the Defendant from using the words "twist mop" as part of a comparative phrase. That rule has an element of punishment; a party who has infringed upon the trademark of another is prevented from doing things which a non-infringer would be permitted to do. An application of that rule in this case would demonstrate the punitive as-

---

**13.** Above, the Court has concluded that the Defendant's use of the words "twist mop" as part of the phrase "the easiest twist mop" will not infringe upon the Plaintiff's trademark.

pect of the rule, since the Court has found, above, that the use of the phrase "twist mop" in the manner proposed by the Defendant would not create a likelihood of confusion. Thus, the safe-distance rule would prevent the Defendant from engaging in otherwise lawful activity. Based upon the following reasoning, the Court will not prevent the Defendant from doing so. In *Broderick & Bascom*, the Sixth Circuit concluded that the defendant had fraudulently misappropriated the defendant's trademark. In contrast, this Court has not found that the Defendant acted willfully when it adopted the phrase "TWIST MOP" as its trademark. To this point, the Court has ruled upon the Plaintiff's request for a preliminary injunction, rather than conducting a trial on the merits. Accordingly, a full record has not been developed. In the absence of such a record which would support a finding of willfulness on the part of the Defendant, this Court will not punish that party, by employing the safe-distance rule to prevent it from engaging in activity which does not infringe upon the Plaintiff's trademark. Accordingly, the Court will not apply the safe-distance rule to enjoin the Defendant from using the words "twist mop" as part of a comparative phrase and otherwise than as a trademark

### B. Other issues relating to scope of the injunction

The additional questions for the Court to consider are whether to require a recall of the Defendant's infringing products and how much time the Defendant should be given to effect a change in its packaging.

■ *First,* a District Court has the discretion to order the recall of infringing products. *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 646 F.2d 800 (2d Cir. 1981), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). *See also Nikon,*

*Inc. v. Ikon Corp.,* 987 F.2d 91, 97 (2d Cir.1993) (District Court has discretion to order recall as part of a permanent injunction). In *Perfect Fit,* the Second Circuit noted that a recall is an "unusual" remedy; however, it affirmed the recall order entered by the District Court, because the evidence established that the defendant had intentionally copied the plaintiff's trade dress. Herein, although not ordering the Defendant to recall the infringing products may not afford the Plaintiff all the protection it desires,[14] the Court will decline to exercise its discretion to order a recall, given that the Court has not found that the Defendant intentionally copied the Plaintiff's trademark.[15]

■ *Second,* the Court has the discretion to afford Defendant a reasonable period of time in which to make a transition to new packaging. However, since the Court has not ordered a recall of the Defendant's mops which are packaged in the infringing sleeve, the Court will not afford the Defendant such a transition period. In the absence of a recall, mops packaged in the Defendant's infringing sleeve will remain on the marketplace. Indeed, in the more than one month since the Court issued its Decision of March 20th, the Defendant has been able to ship mops which are so packaged. If this Court were to afford the Defendant a transition period, during which it could continue to distribute mops with the infringing package, the value of the injunctive relief to which this Court has concluded the Plaintiff is entitled would be further diminished. Consequently, the Defendant will not be permitted to ship any additional mops which are packaged in a sleeve upon which the infringing use of the phrase "TWIST MOP" is printed.

### II. Amount of bond

■ Rule 65(c) of the Federal Rules of Civil Procedure provides that a prelimi-

---

14. Plaintiff argues that a recall is necessary in order to prevent the Defendant from profiting from the advertising campaign upon which it (Plaintiff) is about to embark.

15. Of course, by declining to order a recall, the Court will decrease the amount of the bond which the Plaintiff will be required to post.

nary injunction shall not issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The amount of a bond to require is committed to the informed discretion of the District Court. *Moltan Co. v. Eagle–Picher Industries, Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995). As a result of the preliminary injunction entered by this Court, the Defendant will be required to revise its television commercials and to develop new packaging. During the April 15th hearing, Ronald Tillery testified that revising the television commercials will cost $7,500. In addition, the Defendant presented evidence that the costs associated with new packaging would be between $54,395 and $117,146, depending upon the time required to implement the change and the extent of the change made necessary by the injunction. *See* Defendant's Exhibits T and Y. In addition, since the Court has not afforded the Defendant a transition period in which to change its packaging, that party may suffer some lost sales as a result of the injunction. However, the Defendant did not introduce evidence either of the sales it would lose as a result of being preliminarily enjoined or (more to the point) of the profits from those sales it may also lose as a consequence. In the absence of evidence that the injunction will cause a decline in sales which, in turn, will cause the Defendant to lose profits, the Court will not include in the bond a component for lost sales or profits. Based upon all of this evidence, the Court finds that a bond in the amount of $93,000 is reasonable.[16]

Based upon the foregoing and the Court's Decision of March 20, 1997, the Court preliminarily enjoins the Defendant and its officers, directors and employees from marketing a twisting, self-wringing mop using the words "twist" and "Mop," or some confusingly similar form of them, as a trademark.[17] This injunction shall not prevent the Defendant from using the words "twist mop" other than as a trademark and as part of the comparative phrase "the easiest twist mop." In addition, this injunction shall prevent the Defendant from broadcasting the television commercials which were shown during the April 15th hearing, *until* the packaging upon which the infringing use of the phrase "TWIST MOP" appears (i.e., the manner in which that phrase is vertically printed, in twisting fashion, in prominent lettering on the front of the package, as a trademark) is deleted from those commercials. Once the offending packaging is removed from the commercials, the Defendant may broadcast them. In other words, the Defendant is not enjoined from using any of the audio in those commercials. The Defendant is not ordered to recall its mops that are packaged in a sleeve, upon which the infringing use of the phrase "TWIST MOP" appears. The Defendant shall not be afforded a transition period, during which to adopt new packaging. Therefore, when this preliminary injunction becomes effective (upon the posting of bond by the Plaintiff), the Defendant will be enjoined from shipping any mops which are packaged in sleeves upon which the infringing use of the phrase "TWIST MOP" appears. This injunction shall become effective upon the Plaintiff posting bond in the sum of $93,-

16. The figure is comprised of the following components, to wit: $7,500 to edit the television commercial, and $85,500 for costs associated with new packaging (the approximate midpoint of the two figures supplied by the Defendant).

17. In its post-hearing memorandum, Defendant suggests that it should be permitted to use the phrase "self-twisting." *See* Doc. # 29 at 19. The phrase "self-twisting" used in conjunction with the word "mop," as a trademark, would be confusingly similar to the use of the phrase "TWIST MOP" as a trademark and, therefore, would be enjoined.

000, and shall remain in effect until this litigation is resolved upon the merits.